**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON, TEXAS**

| | | |
|---|---|---|
| EXPERIENCE INFUSION CENTER, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| HEALTH CARE SERVICE CORPORATION, A Mutual Legal Reserve Company AND BLUE CROSS AND BLUE SHIELD OF TEXAS, a Division of HEALTH CARE SERVICE CORPORATION, A Mutual Legal Reserve Company, | ) ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) ) | Case No. 3:16-cv-00199 |
| | ) ) | Hon. George C. Hanks, Jr. |
| HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, | ) ) ) ) | |
| Counterplaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| EXPERIENCE INFUSION CENTERS, LLC; EXPERIENCE INFUSION CENTERS I-45 WOODLANDS, LLC; DEHEALTH, LLC d/b/a CEGO INFUSION PHARMACY; JAMES RUTHERFORD; and OGOCHUKWU GLORIA EGBUCHUNAM, | ) ) ) ) ) ) ) ) ) ) | |
| Counterdefendants. | ) ) | |

**DEFENDANT HEALTH CARE SERVICE CORPORATION'S ANSWER,**
<u>**AFFIRMATIVE DEFENSES AND COUNTERCLAIM**</u>

Defendant, Health Care Service Corporation ("HCSC"), an Illinois Mutual Legal Reserve

Company, a division of which is Blue Cross and Blue Shield of Texas (hereafter, collectively,

"BCBSTX"), hereby answers Plaintiff Experience Infusion Center, LLC's ("Plaintiff")

Complaint as follows:[1]

I.      **STATEMENT OF CLAIMS**

        1.      This is a Texas Prompt Pay Act case. Plaintiff is a licensed health care provider who provided infusion care services to a number of Defendants' insureds as an out of network provider in the State of Texas. All of the infusion care services were provided to Defendants' insured in the State of Texas. During the time period when these patients were provided infusion care services, Plaintiff was a licensed health care provider with a valid NPI number through which claims for infusion care services were submitted to Defendants for payment. During this time period, Plaintiff was also credentialed by Defendants to provide infusion care services to its insureds as an out of network provider.

    **ANSWER:**  BCBSTX admits that Plaintiff has a valid NPI number and was a licensed

healthcare provider until the Texas Secretary of State forfeited its certificate of formation as of

May 13, 2016, but denies that Plaintiff is currently a licensed healthcare provider. BCBSTX

admits that Plaintiff does not have a written contract with BCBSTX and, therefore, was and is

out-of-network with BCBSTX. BCBSTX admits that Plaintiff provided infusion care services to

some of BCBSTX's insureds and that BCBSTX credentialed Plaintiff as on out-of-network

provider, but denies that Plaintiff provided infusion care services to all of the BCBSTX insureds

whose claims are at issue in this case. BCBSTX denies that BCBSTX and HCSC are separate

defendants; HCSC and BCBSTX are not separate entities and, therefore, there is one defendant

in this matter.[2] BCBSTX denies the remaining allegations of this paragraph.

---

[1] Plaintiff did not number the paragraphs in its Complaint.  BCBSTX has numbered and set out in bold text the allegations by paragraph and responds to each paragraph separately.

[2] HCSC is an Illinois mutual legal reserve company, a division of which is BCBSTX. HCSC's divisions are not separate defendants, even when named as a party to a lawsuit. *See, e.g., Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*, No. 13 C 8906, 2014 WL 4214260, at *1 (N.D. Ill. Aug. 22, 2014) ("Defendant points out, and plaintiffs do not contradict, that Blue Cross Blue Shield of Texas is merely a division of HCSC, as reflected in the caption. Thus it appears that HCSC is the sole defendant in this case."); *Menkowitz v. Blue Cross Blue Shield of Illinois*, No. CIV. 14-2946, 2014 WL 5392063, at *1, n. 2 (D.N.J. Oct. 23, 2014) (stating that "[a]lthough

2.      All of the claims for infusion care services that were submitted by Plaintiff to Defendants for payment were expected to be properly and timely paid by Defendants according to the requirements of the Texas Prompt Pay Act; and, at the payment rate contained in the bills or invoices submitted to Defendants for payment. Despite the requirements of the Texas Prompt Pay Act, Defendants failed to timely and properly pay Plaintiff's claims, resulting in substantial damages. By filing this lawsuit, Plaintiff seeks to recover actual damages, statutory penalties and interest, and attorney's fees for all of the unpaid claims and underpaid claims for infusion care services that Defendants refused and/or failed to timely and properly pay in compliance with the Texas Prompt Pay Act.

**ANSWER:** BCBSTX lacks knowledge or information sufficient to form a belief as to what Plaintiff expected. BCBSTX admits that Plaintiff seeks recovery of actual damages, statutory penalties and interest, and attorneys' fees, but BCBSTX denies that Plaintiff is entitled to such damages and that BCBSTX failed to timely or properly pay Plaintiff's claims. BCBSTX denies the remaining allegations of this paragraph.

3.      To be clear, Plaintiff seeks [sic] recover the difference between the full amount billed and the amount paid, if any, for each and every infusion care service claim that Plaintiff submitted to Defendants for payment in regard to the infusion care services provided to Defendants' insureds. In support of these damages, Plaintiff has prepared a spreadsheet that itemizes the individual claims data information for each claim at issue in this case. Once a HIPAA compliant Qualified Protective Order has been entered by the Court, the spreadsheet will be produced to Defendants.

**ANSWER:** BCBSTX admits that Plaintiff seeks to recover the difference between the full amount billed and the amount paid, if any, for the claims described in this paragraph, but

---

Plaintiffs named Blue Cross Blue Shield of Illinois as the Defendant, the proper party is Health Care Service Corporation."). BCBSTX incorporates this denial as a continuing denial applicable to all paragraphs of the Complaint.

BCBSTX denies that Plaintiff is entitled to any such recovery. BCBSTX further denies that Plaintiff seeks such recovery for "each and every infusion care service claim" that Plaintiff submitted to BCBSTX as demonstrated by the spreadsheet Plaintiff has produced to BCBSTX, which contains a list of the claims at issue in this case. BCBSTX admits that this spreadsheet purports to contain data concerning the individual healthcare benefits claims at issue in this case, but BCBSTX denies that the data in the spreadsheet are accurate and complete. BCBSTX denies the remaining allegations of this paragraph.

II. **PARTIES**

   **A.** Plaintiff

   4. Plaintiff is a health care provider doing business as an infusion care center in Houston, Texas. Plaintiff is a resident and citizen of the State of Texas. At all times material to this case, Plaintiff provided infusion care services to Defendant's insureds as an out of network provider in the State of Texas. During the time period when these patients were provided infusion care services, Plaintiff was a licensed health care provider with a valid NPI number through which claims for infusion care services were submitted to Defendants for payment. During this time period, Plaintiff was also credentialed by Defendants to provide infusion care services to its insureds as an out of network provider; and, all patient care and treatment occurred in Texas.

   **ANSWER:** BCBSTX admits that admits that Plaintiff has an NPI number and was an out-of-network healthcare provider doing business as an infusion center in Houston, Texas, and that Plaintiff had its principal place of business in the State of Texas when the events and occurrences at issue in its complaint allegedly occurred, but avers that the Texas Secretary of State forfeited Plaintiff's certificate of formation as of May 13, 2016. BCBSTX therefore denies that Plaintiff is currently a licensed healthcare provider. BCBSTX admits that Plaintiff provided

infusion care services to some of BCBSTX's insureds, and that Plaintiff submitted healthcare

benefits claims to BCBSTX. BCBSTX denies the remaining allegations of this paragraph.

**B.**     Defendants

5.      Defendant Health Care Service Corporation, a Mutual Legal Reserve Company, is a citizen of the State of Illinois. This Defendant is an Illinois corporation with its principal place of business in Chicago, Illinois. Currently, and at the time of the events giving rise to this lawsuit, Defendant Blue Cross Blue Shield of Texas was a division of Health Care Service Corporation, a Mutual Legal Reserve Company. This Defendant may be served with citation through the following registered agent for service of process: Corporation Service Company, 211 East 7th Street Suite 620, Austin TX 78701-3218. The Clerk is requested to issue service of citation at this time so that this Defendant may answer and make an appearance in this lawsuit.

**ANSWER:**   BCBSTX admits that HCSC is a Mutual Legal Reserve Company with its

principal place of business in Chicago, Illinois, and that BCBSTX is an unincorporated division

of HCSC. BCBSTX admits that Plaintiff requested the clerk to issue summons and that it may be

served at the stated address. BCBSTX denies the remaining allegations in this paragraph.

6.      Defendant Blue Cross Blue Shield of Texas, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company, is a citizen of Illinois. This Defendant is an Illinois corporation with its principal place of business in Chicago, Illinois. Currently, and at the time of the events giving rise to this lawsuit, Defendant Blue Cross Blue Shield of Texas was a division of Health Care Service Corporation, a Mutual Legal Reserve Company. This Defendant may be served with citation through the following registered· agent for service of process: Corporation Service Company, 211 East 7th Street Suite 620, Austin TX 78701-3218. The Clerk is requested to issue service of citation at this time so that this Defendant may answer and make an appearance in this lawsuit.

**ANSWER:** BCBSTX admits that it is an unincorporated division of HCSC. BCBSTX admits that Plaintiff requested the clerk to issue summons and that it may be served at the stated address. BCBSTX denies the remaining allegations in this paragraph.

## III. JURISDICTION AND VENUE

### A. Jurisdiction

7. This Court has both subject matter and personal jurisdiction over Defendants. Pursuant to § 1332(a) of the United States Code, this Court has diversity jurisdiction over this case. 28 U.S.C.A. § 1332(a) (West 2015). The amount in controversy for this case, exclusive of interest and costs, exceeds the sum or value of $75,000.00; and Plaintiff and Defendants are citizens of different States. Specifically, Plaintiff is a citizen of the State of Texas and Defendants are citizens of the State of Illinois. Accordingly, this Court may exercise subject matter jurisdiction over this case.

**ANSWER:** BCBSTX admits that Plaintiff alleges that the amount in controversy exceeds $75,000, but denies that Plaintiff is entitled to that or any other amount. BCBSTX admits that Plaintiff was formerly a Texas limited liability company, that HCSC's principal place of business is in the State of Illinois, and that the Court has subject matter and personal jurisdiction over this case. BCBSTX denies the remaining allegations in this paragraph.

8. This Court has personal jurisdiction over Defendants in this case for the following reasons: (1) At all times material to this case, Defendants were (and still are)-licensed by the State of Texas as insurers to provide health insurance benefits to insureds in the State of Texas; (2) At all times material to this case, Defendants provided (and still provide) health insurance benefits to thousands of Texans all across the State of Texas and in the Southern District of Texas; (3) Defendants were the health insurers that provided health insurance benefits to the patients/insureds who were provided with out of network infusion care services by Plaintiff in this case; and, (4) The claims for infusion care services that were submitted to Defendants for full and prompt payment by Plaintiff were submitted to Defendants, processed by Defendants, and not properly or timely paid by Defendants in the State of Texas.

**ANSWER:** BCBSTX admits that, as a division of HCSC, it is licensed to issue health insurance policies in the State of Texas. BCBSTX further admits that it provides health insurance coverage to thousands of Texans all across the State of Texas and in the Southern District of Texas. BCBSTX admits that it provided health insurance coverage to the insureds referenced in the spreadsheet that Plaintiff has produced to BCBSTX, but BCBSTX denies that Plaintiff provided infusion care services to all of those insureds and further denies that Plaintiff submitted healthcare benefits claims to BCBSTX for services provided to all such insureds. BCBSTX denies the remaining allegations of this paragraph.

9.      In sum, the evidence shows that this Court may exercise both general and specific personal jurisdiction over Defendants. Given the fact that Defendants conduct a substantial amount of business in the State of Texas and have purposefully availed themselves of the privileges and benefits of conducting business in the State of Texas, including the adjudication of claims of this nature in federal court in the State of Texas, Defendants have both continuous and systematic contacts with the State of Texas to support the exercise of general personal jurisdiction over Defendants. Additionally, based on their conduct in this case, Defendants have sufficient minimum, purposeful contacts with the State of Texas for this Court to exercise specific personal jurisdiction over these Defendants in this case. Finally, given Defendants' connection to the State of Texas, the exercise of personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

**ANSWER:** BCBSTX admits that the Court has personal jurisdiction over BCBSTX for purposes of this case. BCBSTX is not required to respond to the allegations in this paragraph to the extent they state legal conclusions, but to the extent a response is required, BCBSTX denies them to the extent they misstate or mischaracterize the law.

**B.**      Venue

10.      Venue is proper in this Court and Division under § 1391(b)(l)-(2) of the United States Code because all

Defendants "reside" in the State of Texas (in which this judicial district is located) based on the provisions of§§ 1391(c)(2) and 1391(d) of the United States Code; and, all or a substantial part of the events giving rise to Plaintiffs claims occurred in this judicial district. 28 U.S.C.A. § 1391(b)(l)-(2) (West 2015); 28 U.S.C.A. §§ 1391(c)(2), 1391(d) (West 2015). A civil action can be brought in a judicial district in which any defendant resides and a judicial district in which all or a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C.A. § 1391(b)(l)-(2) (West 2015). Venue is appropriate in this Court and division according to the venue provisions set forth in § 1391(b)(l)-(2) of the United States Code; and, §§ 1391(c)(2) and 1391(d) of the United States Code. 28 U.S.C.A. § 1391(b)(l)-(2) (West 2015); 28 U.S.C.A. §§ 1391(c)(2), 1391(d) (West 2015).

**ANSWER:** BCBSTX admits that venue is proper in the Galveston Division of the Southern District of Texas.

11. Pursuant to §§ 1391(c)(2) and 1391(d) of the United States Code, Defendants are corporate entities with the capacity to sue and be sued in their common name under applicable law. 28 U.S.C.A. §§ 1391(c)(2), 1391(d) (West 2015). Defendants are also subject to personal jurisdiction in the State of Texas and this district. Id. Accordingly, Defendants are deemed to reside in this district for venue purposes because Defendants are subject to personal jurisdiction with respect to the civil action in question. 28 U.S.C.A. §§ 1391(c)(2), 1391(d) (West 2015). Venue is proper in this Court and Division under 28 U.S.C.A. § 139l(b)(l) (West 2015).

**ANSWER:** BCBSTX admits that it is subject to personal jurisdiction in the Southern District of Texas, and that venue is proper in the Galveston Division of the Southern District of Texas.

12. Venue is also proper in this Court and Division under§ 1391(b)(2) of the United States Code because all or a substantial part of the events giving rise to Plaintiffs claims occurred in this judicial district. 28 U.S.C.A. § 1391(b)(2) (West 2015). As stated above, the claims asserted by Plaintiff against Defendants seek relief under the Texas Prompt Pay Act. At the time of the events giving rise to this

lawsuit, Plaintiff provided infusion care services to patients at multiple office locations in the Houston, Harris County area as well as in Highlands, Chambers County, Texas. All of the infusion care services that were provided to Defendants' insureds in this case were provided in the State of Texas. The individual insureds to whom infusion care services were provided in this case live in Houston, Harris County, Texas and League City, Galveston County, Texas. All of the bills, invoices, or claims for infusion care services that were submitted to Defendant for payment on services rendered were sent to Defendants from Texas; and, were processed by Defendants in Texas.

**ANSWER:** BCBSTX admits that venue is proper in the Galveston Division of the Southern District of Texas. BCBSTX admits that Plaintiff had an office in Houston, Texas, but denies that Plaintiff had offices in Highlands, Chambers County, Texas. BCBSTX further denies that Plaintiff provided infusion care services to all of the insureds listed on the spreadsheet that it produced to BCBSTX, that Plaintiff submitted healthcare benefits claims to BCBSTX for services that it provided to all such insureds, and that BCBSTX processed healthcare benefits claims sent by Plaintiff for all such insureds. BCBSTX denies the remaining allegations in this paragraph.

## IV.    STATEMENT OF FACTS

13.    The claims asserted by Plaintiff against Defendant seek relief under the Texas Prompt Pay Act. All of the infusion care services that were provided to Defendants' insureds were provided in the State of Texas. All of the bills, invoices, or claims for infusion care services that were submitted to Defendant for payment on services rendered were sent to Defendants from Texas; and, were processed by Defendants in Texas. Each of the patients who received infusion care services from Plaintiff during the time period at issue in this case received their health insurance benefits through Defendants; however, none of the health insurance benefits were provided to these patients as a part of any ERISA-based health plan. Accordingly, no provision of the Employee Retirement Income Security Act ("ERISA") applies to this case. Instead, the statutory duties and obligations    owed    to    Plaintiff    by    Defendants    arise

exclusively from the independent legal duties owed by an insurer to out of network, infusion care providers, under the Texas Prompt Pay Act. These claims are detailed below.

**ANSWER:** BCBSTX admits that Plaintiff provided infusion care services to some of BCBSTX's insureds. However, BCBSTX denies that Plaintiff provided all of the infusion care services at issue in this case or that Plaintiff submitted all of the healthcare claims at issue in this case (as represented on the spreadsheet Plaintiff produced to BCBSTX). BCBSTX admits that all of the insureds who are referenced in the spreadsheet that Plaintiff produced to BCBSTX were covered under policies insured by BCBSTX that are not governed by ERISA. BCBSTX denies the remaining allegations of this paragraph.

14.    At all times relevant to the allegations contained in this complaint, Defendants were "insurers" as this term is defined in the Texas Insurance Code. TEX. INS. CODE ANN. § 1301.001(5)(Vernon 2015) (stating that the term "insurer" means a life, health, and accident insurance company, health and accident insurance company, health insurance-company, or other company operating under Chapters 841, 842, 884, 885, 982, or 1501 of the Texas Insurance Code, that is authorized to issue, deliver, or issue for delivery in the State of Texas health insurance policies). During the relevant time periods for this case, Defendants were licensed to do business in the State of Illinois and Texas as a health insurance company. As a licensed insurer doing business in the State of Texas, Defendants are subject to the laws of the State of Texas governing unfair trade practices and the prompt payment of claims, including the provisions of the Texas Prompt Pay Act.

**ANSWER:** BCBSTX admits that HCSC is a licensed health insurer in the State of Illinois, and that BCBSTX is a licensed health insurer in the State of Texas. The remaining allegations in this paragraph contain legal conclusions, and BCBSTX denies them to the extent they misstate applicable law.

15.    At all times relevant to the allegations contained in this complaint, Plaintiff was a health provider who provided specialty or other medical care or health care services at the

request of an in network, preferred provider because the services provided by Plaintiff were not reasonably available from an in network preferred provider who was included in the preferred delivery network.

**ANSWER:** Denied.

16.     Plaintiff provided infusion care services to patients who received their health insurance through Defendants. At the time the infusion care was provided to these patients, Plaintiff was an out of network provider, meaning that Plaintiff did not have a written provider contract with Defendants by which Plaintiff and Defendants had agreed upon particular fee for service rates for the provision of infusion care to Defendants' insureds. All of the infusion care services provided Defendants' insureds constitute "specialty or other medical care or health care services" that were provided to Defendants' insureds at the request of an in network, preferred provider named Patricia Salvato, M.D. The infusion care services were requested by Dr. Salvato because the infusion care services provided by Plaintiff were not reasonably available from an in network preferred provider who was included in the preferred delivery network. Accordingly, Plaintiff has standing under the Texas Prompt Pay Act to assert a claim for actual damages, penalties and interest, and attorney's fees. TEX. INS. CODE ANN. § 1301.069(1)(2)(B) (Vernon 2015). Once the infusion care was provided to these patients, Defendants were billed for the infusion care services that were provided by Plaintiff through the submission of a "clean" claim as defined in the Texas Insurance Code. TEX. INS. CODE ANN. § 1301.131 (Vernon 2015); TEX. INS. CODE ANN. § 843.336 (Vernon 2015). The claims for infusion care services were submitted by Plaintiff to Defendants for payment in electronic format.

**ANSWER:**   BCBSTX admits that Plaintiff provided infusion care services to some of BCBSTX's insureds, but denies that Plaintiff provided infusion case services to all of the insureds whose healthcare benefits claims are alleged in Plaintiff's complaint. BCBSTX admits that Plaintiff was an out-of-network provider at the times relevant to the healthcare benefits claims alleged in Plaintiff's complaint. BCBSTX admits that Plaintiff submitted some of the claims at issue to BCBSTX in electronic format. BCBSTX admits that some of the claims at

issue reflected that the patients were referred to Plaintiff by Dr. Salvato. BCBSTX denies the

remaining allegations of this paragraph.

17. All the claims submitted to Defendants for payment complied with all the necessary elements of a clean claim as set forth in § 1301.131 and § 843.336 of the Texas Insurance Code. TEX. INS. CODE ANN. § 1301.131 (Vernon 2015); TEX. INS. CODE ANN. § 843.336 (Vernon 2015). Plaintiff's clean claims were timely submitted to Defendants for prompt payment, not later than the 95th day after the date Plaintiff provided the infusion care services for which the claim was made in compliance with §§ 1301.102 and 843.337 of the Texas Insurance Code. TEX. INS. CODE ANN. § 1301.102 (Vernon 2015); TEX. INS. CODE ANN. § 843.337 (Vernon 2015).

**ANSWER:** Denied.

18. Defendants were required to pay Plaintiff for the clean claims (at the specified rate billed to Defendants by Plaintiff) that were properly and timely submitted to Defendants within the statutorily prescribed 30 day deadline set forth in §§ 1301.103 and 843.338 of the Texas Insurance Code. TEX. INS. CODE ANN. § 1301.103 (Vernon 2015); TEX. INS. CODE ANN. § 843.338 (Vernon 2015); TEX. INS. CODE ANN. § 1301.069 (Vernon 2015) (Texas Prompt Pay Act requirements apply to out of network providers); TEX. INS. CODE ANN. § 843.351 (Vernon 2015) (same); TEX. INS. CODE ANN. § 1301.056 (Vernon 2015) (prohibiting insurers and third party administrators from unilaterally discounting or refusing to pay out of network providers for services rendered at the rate billed by provider).

**ANSWER:** Denied.

19. Despite the timely and proper submission of clean claims, Defendants did not: (1) contest or dispute Plaintiff's claims within the 30 day deadline for action; (2) determine that the clean claims submitted by Plaintiff were payable at the rate of payment set forth by Plaintiff, and (3) did not pay the billed charges submitted by Plaintiff according to the rate of payment set forth in the clean claim forms submitted by Plaintiff, as required under Texas law. TEX. INS. CODE ANN. § 1301.103 (Vernon 2015); TEX. INS. CODE ANN. § 843.338 (Vernon 2015); TEX. INS. CODE ANN. § 1301,069

(Vernon 2015) (Texas Prompt Pay Act requirements apply to out of network providers); TEX. INS. CODE ANN. § 843.351 (Vernon 2015) (same); TEX. INS. CODE ANN. § 1301.056 (Vernon 2015) (prohibiting insurers and third party administrators from unilaterally discounting or refusing to pay out of network providers for services rendered at the rate billed by provider).

**ANSWER:** Denied

20.    In violation of the Texas Prompt Pay Act, Defendants failed to timely and properly pay Plaintiff for the full amount of the billed charges submitted to Defendants for srvices rendered on these infusion care patients as required by the Texas Prompt Pay Act. Consequently, Plaintiff has experienced substantial actual damages; and, seeks all relief available under the Texas Prompt Pay Act, including actual damages, statutory penalties and interest, and attorney's fees for claims that were never paid at all; and, for those claims that were improperly and untimely underpaid by Defendants in violation of the Texas Prompt Pay Act.

**ANSWER:** Denied.

## V.    TEXAS PROMPT PAY ACT CLAIMS

21.    As outlined above, this is a case in which Plaintiff is pursuing its remedies under the Texas Prompt Pay Act. TEX. INS. CODE ANN. §§ 1301.101-1301.109 (Vernon 2015) and TEX. INS. CODE ANN. §§ 843.336-843.354 (Vernon 2015). Despite the timely and proper submission of clean claims, Defendants did not: (1) contest or dispute Plaintiff s claims within the 30 day deadline for action; (2) determine that the clean claims submitted by Plaintiff were payable at the rate of payment set forth by Plaintiff, and (3) did not pay the billed charges submitted by Plaintiff according to the rate of payment set forth in the clean claim forms submitted by Plaintiff, as required under Texas law. TEX. INS. CODE ANN. § 1301.103 (Vernon 2015); TEX. INS. CODE ANN. § 843.338 (Vernon 2015); TEX. INS. CODE ANN. § 1301.069 (Vernon 2015) (Texas Prompt Pay Act requirements apply to out of network providers); TEX. INS. CODE ANN. § 843.351 (Vernon 2015) (same); TEX. INS. CODE ANN. § 1301.056 (Vernon 2015) (prohibiting insurers and third party administrators from unilaterally discounting

or refusing to pay out of network providers for services rendered at the rate billed by provider).

**ANSWER:** BCBSTX admits that Plaintiff purports to pursue remedies under Texas Insurance Code Sections 1301.101-1301.109 and 843.336-843.354, but denies that Plaintiff is entitled to any of the relief it seeks in this Complaint. BCBSTX is not required to respond to the allegations in this paragraph to the extent they state legal conclusions, but to the extent a response is required, BCBSTX denies them to the extent they misstate or mischaracterize the law. BCBSTX denies the remaining allegations of this paragraph.

22. In violation of the Texas Prompt Pay Act, Defendants failed to timely and properly pay Plaintiff for the full amount of the billed charges submitted to Defendants for services rendered on these infusion care patients as required by the Texas Prompt Pay Act. Consequently, Plaintiff has experienced substantial actual damages; and, seeks all relief available under the Texas Prompt Pay Act, including actual damages, statutory penalties and interest, and attorney's fees for claims that were never paid at all; and, for those claims that were improperly and untimely underpaid by Defendants in violation of the Texas Prompt Pay Act.

**ANSWER:** BCBSTX is not required to respond to the allegations in this paragraph to the extent they state legal conclusions, but to the extent a response is required, BCBSTX denies them to the extent they misstate or mischaracterize the law. BCBSTX denies the remaining allegations of this paragraph.

23. For the wholly unpaid claims, Defendants are required to pay Plaintiff the total amount of the billed charges (actual damages); and, pursuant to § 1301.137(c) of the Texas Insurance Code, and § 843.342(c) of the Texas Insurance Code, a penalty in the amount of the lesser of: (1) 100 percent of the billed charges, as submitted by Plaintiff, or $200,000.00 per claim submitted, plus 18 percent annual interest on this amount per claim. TEX. INS. CODE ANN. § 1301.137(c) (Vernon 2015); TEX. INS. CODE ANN. § 843.342(c) (Vernon 2015); TEX. INS. CODE ANN. § 1301.069 (Vernon 2015) (Texas Prompt Pay Act requirements apply to out of network providers); TEX. INS.

CODE ANN. § 843.351 (Vernon 2015) (same). Interest on the individual claim amounts accrues beginning on the date the insurer was required to pay the claim and ending on the date the claim and the penalty are paid in full. TEX. INS. CODE ANN. § 1301.137(c) (Vernon 2015); TEX. INS. CODE ANN. § 843.342(c) (Vernon 2015); TEX. INS. CODE ANN. § 1301.069 (Vernon 2015) (Texas Prompt Pay Act requirements apply to out of network providers); TEX. INS. CODE ANN. § 843.351 (Vernon 2009) (same).

**ANSWER:** BCBSTX is not required to respond to the allegations in this paragraph to the extent they state legal conclusions, but to the extent a response is required, BCBSTX denies them to the extent they misstate or mischaracterize the law. BCBSTX denies the remaining allegations of this paragraph.

24.    For the claims that were improperly and untimely underpaid, Defendants are required to pay Plaintiff the total amount of the difference between 100 percent of the billed charges, as submitted by Plaintiff, and the amount that was partially paid (actual damages); and, all available relief under § 1301.137(d)-(f) of the Texas Insurance Code, and § 843.342(d)-(f) of the Texas Insurance Code, including statutory penalties and interest on the lesser of: (1) underpaid amount for each claim (e.g., the difference between 100 percent of the billed charges, as submitted by Plaintiff, and the amount that was partially paid), or $200,000.00 per underpaid claim submitted, plus 18 percent annual interest on this amount per claim. TEX. INS. CODE ANN. § 1301.137(d)-(f) (Vernon 2015); TEX. INS. CODE ANN. § 843.342(d)-(f) (Vernon- 2015); TEX. INS. CODE ANN. § 1301.069 (Vernon 2015) (Texas Prompt Pay Act requirements apply to out of network providers); TEX. INS. CODE ANN. § 843.351 (Vernon 2015) (same). Interest on the individual claim amounts accrues beginning on the date the insurer was required to pay the claim and ending on the date the claim and the penalty are paid in full. TEX. INS. CODE ANN. § 1301.137(d)-(f) (Vernon 2015); TEX. INS. CODE ANN. § 843.342(d)-(f) (Vernon 2015); TEX. INS. CODE ANN. § 1301.069 (Vernon 2015) (Texas Prompt Pay Act requirements apply to out of network providers); TEX. INS. CODE ANN. § 843.351 (Vernon 2015) (same).

**ANSWER:** BCBSTX is not required to respond to the allegations in this paragraph to the extent they state legal conclusions, but to the extent a response is required, BCBSTX denies them to the extent they misstate or mischaracterize the law. BCBSTX denies the remaining allegations of this paragraph.

> 25. Plaintiff is also entitled to recover reasonable attorney's fees and court costs. TEX. INS. CODE ANN. § 1301.108 (Vernon 2015); TEX. INS. CODE ANN. § 843.343 (Vernon 2015); TEX. INS. CODE ANN. § 1301.069 (Vernon 2015) (Texas Prompt Pay Act requirements apply to out of network providers); TEX. INS. CODE ANN. § 843.351 (Vernon 2015) (same).

**ANSWER:** BCBSTX is not required to respond to the allegations in this paragraph to the extent they state legal conclusions, but to the extent a response is required, BCBSTX denies them to the extent they misstate or mischaracterize the law. BCBSTX denies the remaining allegations of this paragraph.

## VI. <u>WAIVER</u>

> 26. According to § 1301.103 and § 843.338 of the Texas Insurance Code, within 30 days of receiving an electronic "clean claim" (45 days for non-electronic clean claims) from an out of network provider, "the insurer shall make a determination of whether the claim is payable and:
>
>> 1. If the insurer determines the entire claim is payable, pay the total amount of the claim in accordance with the contract between the preferred provider and the insurer;
>>
>> 2. If the insurer determines a portion of the claim is payable, pay the portion of the claim that is not in dispute and notify the preferred provider in writing why the remaining portion of the claim will not be paid; or
>>
>> 3. If the insurer determines that the claim is not payable, notify the preferred provider in writing why the claim will not be paid."

TEX. INS. CODE ANN. § 1301.103 (Vernon 2015) (emphasis added); TEX. INS. CODE ANN. § 843.338 (Vernon 2015) (emphasis added). The plain text of §§ 1301.103 and 843.338 of the Texas Insurance Code requires an insurer to pay or dispute an out of network provider's claim within the 30/45 day deadline. Id. There is no other time period provided in the statute to allow the insurer to fulfill its statutory duty to "make a determination of whether the claim is payable[.]" *Id*. In fact, the Prompt Pay Act contains multiple provisions that expressly prohibit any extension of the 30/45 day deadline to allow the insurer more time to fulfill its pay or dispute duties under §§ 1301.103 and 843.338 of the Texas Insurance Code. TEX. INS. CODE ANN. § 1301.1053 (Vernon 2015); TEX. INS. CODE ANN. § 843.3405 (Vernon 2015); TEX. INS. CODE ANN. § 1301.134(b) (Vernon 2015); TEX. INS. CODE ANN. § 843.349(b) (Vernon 2015).

**ANSWER:** BCBSTX is not required to respond to the allegations in this paragraph to the extent they state legal conclusions, but to the extent a response is required, BCBSTX denies them to the extent they misstate or mischaracterize the law. BCBSTX denies the remaining allegations in this paragraph.

27.     None of Plaintiff s claims in this case were properly paid or disputed within the 30/45 day deadline. Defendants never alleged that any of Plaintiff's claims were improperly or untimely submitted for payment, or complained to Plaintiff that any claim submitted by Plaintiff was not a "clean claim" as defined by Texas law within the statutorily required time period. By failing to contest or dispute any of Plaintiff's claims within the 30/45 day deadline, Defendants have waived the ability to contest or dispute these claims in the context of this case. TEX. INS. CODE ANN. § 1301.137 (Vernon 2015); TEX. INS. CODE ANN. § 843.342 (Vernon 2009); TEX. INS. CODE ANN. § 1301.069 (Vernon 2015) (Texas Prompt Pay Act requirements apply to out of network providers) and TEX. INS. CODE ANN. § 843.351 (Vernon 2015) (same). Finally, none of the defenses set out in the Texas Prompt Pay Act that are potentially available to avoid the penalties discussed above are applicable. TEX. INS. CODE ANN. § 1301.137(h) (Vernon 2015) and TEX. INS. CODE ANN. § 843.342(h) (Vernon 2015).

**ANSWER:** BCBSTX is not required to respond to the allegations in this paragraph to the extent they state legal conclusions, but to the extent a response is required, BCBSTX denies them to the extent they misstate or mischaracterize the law. BCBSTX denies the remaining allegations of this paragraph.

## VII.   CONDITIONS PRECEDENT

      28.    Plaintiff has complied with all conditions precedent necessary to the filing of this lawsuit. Plaintiff has fulfilled all written notice requirements under Texas law that are necessary for the presentment of its Texas Prompt Pay Act claims and its claim for reasonable attorneys' fees. In sum, all conditions precedent that form the basis of Plaintiff s claims against Defendants have occurred, been satisfied, or have been fulfilled.

**ANSWER:** Denied.

## VIII.   JOINT AND SEVERAL LIABILITY

      29.    Defendants are jointly and severally liable for the Texas Prompt Pay Act violations that form the basis of this lawsuit.

**ANSWER:** Denied.

## IX.   INTEREST AND COSTS

      30.    Plaintiff seeks the recovery of pre judgment interest and post judgment interest as authorized by law. Plaintiff also seeks recovery for all costs, including costs of court.

**ANSWER:** BCBSTX admits that Plaintiff purports to seek the recovery of the relief sought in this paragraph, but denies that Plaintiff is entitled to any of the relief it seeks in its complaint.

## X.   JURY DEMAND

      31.    Plaintiff hereby demands a trial by jury as guaranteed by the Texas and U.S. Constitutions. Plaintiff has paid the jury fee for a jury trial.

**ANSWER:**   This paragraph does not contain any allegations against BCBSTX and, therefore, no response is required. However, BCBSTX denies that Plaintiff is entitled to a jury

trial for its cause of action, and further denies that the right to jury trial under the Texas Constitution has any relevance to this federal lawsuit.

## AFFIRMATIVE DEFENSES

Without accepting any burden of proof that would not otherwise be borne by BCBSTX, BCBSTX pleads the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff does not state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by Plaintiff's ratification of BCBSTX's conduct.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by waiver.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff has no standing to seek penalties or interest that, if due, are owed to the Texas Health Insurance Pool and/or the Texas Department of Insurance.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred on the grounds that Plaintiff's claims are not "clean claims" as required under the prompt pay provisions of the Texas Insurance Code to be eligible for penalties.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred on the grounds that Plaintiff seeks unconstitutionally high penalties.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail due to its failure to perform conditions precedent to its ability to recover under the Texas Insurance Code, including but not limited to the fact that Dr. Salvato did not refer the patients whose healthcare benefits claims are at issue to Plaintiff because of a lack of available in-network providers of the same services.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff does not have standing to bring an action under the prompt payment provisions of Chapters 1301 or 843 of the Texas Insurance Code.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands. In thousands of healthcare benefits claims Plaintiff submitted to BCBSTX from 2011 to 2014, Plaintiff routinely and intentionally represented the number of milligrams of infusion drugs allegedly administered as the number of units, which had the effect of inflating the number of units claimed (and thus the reimbursements Plaintiff received) by at least 250 times. When BCBSTX discovered Plaintiff's fraudulent scheme and raised it to Plaintiff, Plaintiff ceased misrepresenting the number of units administered and instead increased its billed charge for the infusion drugs to hundreds of times their actual cost in an attempt to continue to recover inflated reimbursements from BCBSTX and its members. Plaintiff thus is now attempting to misuse the Texas Insurance Code to obtain payment of grossly and fraudulently inflated billed charges, because it was unsuccessful in doing so through its fraudulent scheme.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because BCBSTX processed and paid claims in accordance with the terms of its members' plans.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred from recovery of damages as alleged to the extent Plaintiff owes BCBSTX for improper billing practices. In thousands of healthcare benefits claims Plaintiff submitted to BCBSTX from 2011 to 2014, Plaintiff routinely and intentionally represented the number of milligrams of infusion drugs allegedly administered as the number of units, which had the effect of inflating the number of units claimed (and thus the reimbursements Plaintiff received) by at least 250 times. Plaintiff owes BCBSTX millions of dollars in overpayments that BCBSTX made from 2011 to 2014 as a result of Plaintiff's improper billing practices, which should be offset against any amount that BCBSTX is found to owe to Plaintiff.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovering any amount in this case due to its fraudulent submission of claims to BCBSTX. In thousands of healthcare benefits claims Plaintiff submitted to BCBSTX from 2011 to 2014, Plaintiff routinely and intentionally represented the number of milligrams of infusion drugs allegedly administered as the number of units, which had the effect of inflating the number of units claimed (and thus the reimbursements Plaintiff received) by at least 250 times. When BCBSTX discovered Plaintiff's fraudulent scheme and raised it to Plaintiff, Plaintiff ceased misrepresenting the number of units administered and instead increased its billed charge for the infusion drugs to hundreds of times their actual cost in an attempt to continue to recover inflated reimbursements from BCBSTX and its members. Plaintiff thus is now attempting to misuse the Texas Insurance Code to obtain payment of grossly and

fraudulently inflated billed charges from BCBSTX, because it was unsuccessful in doing so through its fraudulent scheme.

## FIFTEENTH AFFIRMATIVE DEFENSE

Even if Plaintiff was a proper party to assert a claim for prompt pay penalties or interest under the Texas Insurance Code, any award of penalties or interest is subject to the limitations in Texas Insurance Code § 1301.137(l) and/or Texas Insurance Code § 843.342(m).

## RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES

BCBSTX reserves the right to assert additional defenses and affirmative defenses as further information regarding Plaintiff's claims becomes available. BCBSTX contends that Plaintiff is entitled to recover nothing for its claims.

## COUNTERCLAIM

Counterplaintiff Health Care Service Corporation, an Illinois Mutual Legal Reserve Company ("HCSC") that operates in Texas as Blue Cross and Blue Shield of Texas ("BCBSTX"), submits its Counterclaim against plaintiff/counterdefendant Experience Infusion Centers, LLC[3] ("EIC") and third-party counterdefendants Experience Infusion Centers I-45 Woodlands, LLC ("I-45"), Dehealth, LLC d/b/a Cego Infusion Pharmacy ("Cego"), James Rutherford ("Rutherford"), and Dr. Ogochukwu Gloria Egbuchunam ("Egbuchunam") and alleges as follows.

## NATURE OF THE CASE

1.     BCBSTX insures and administers health benefit plans in the State of Texas. Counterdefendants EIC, I-45, and Cego (collectively, the "Provider Counterdefendants") are infusion care providers who are not in BCBSTX's provider network. The Provider

_____
[3] "Experience Infusion Centers, LLC" is the correct legal name of the plaintiff/counterdefendant, and not "Experience Infusion Center, LLC," as alleged in its Original Complaint.

Counterdefendants, along with Rutherford and Egbuchunam (collectively, the "Individual Counterdefendants and, together with the Provider Counterdefendants, the "Counterdefendants"), engaged in a conspiracy to fraudulently obtain at least $9.4 million by submitting thousands of healthcare benefits claims to BCBSTX that intentionally inflated the quantities of infusion drugs in order to obtain higher reimbursements from BCBSTX. During the time period that this scheme was ongoing, EIC, I-45, and the Provider Counterdefendants fraudulently obtained at least $9.4 million for drugs that were never administered to the patients for whom it submitted the claims. Pursuant to the federal RICO statute and under common-law fraud doctrines, BCBSTX seeks to recover from the Counterdefendants the amounts it overpaid the Provider Counterdefendants, as well as punitive damages, exemplary damages, treble damages, and BCBSTX's attorneys' fees and costs, in a total amount in excess of $28 million to be proven at trial.

## JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between HCSC and Counterdefendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.      The Court also has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1331 because this Counterclaim asserts causes of action under 18 U.S.C. § 1962 and 18 U.S.C. § 1964(c).

4.      Venue is proper in this Court pursuant to 29 U.S.C. §§ 1391(b)(1) and (c)(2), because all Counterdefendants reside in the Southern District of Texas.

5.      Venue is also proper in this Court pursuant to 18 U.S.C. § 1965, because all

Counterdefendants reside, are found, have registered agents, and/or transact their affairs in this district, and the ends of justice require that all Counterdefendants be sued in this district.

<u>**THE PARTIES**</u>

6.      HCSC is an Illinois Mutual Legal Reserve Company with its principal place of business in Chicago, Illinois. It operates in Texas as a licensed insurer and administrator of health benefit plans through its unincorporated division, BCBSTX.

7.      EIC was formerly an infusion therapy provider that provided various infusion drug therapies to patients in the Houston area. EIC was formerly a Texas limited liability company with its principal place of business at 6300 Richmond Avenue, Houston, Texas 77057. The Texas Secretary of State forfeited EIC's certificate of formation as of May 13, 2016, pursuant to Section 171.309 of the Texas Tax Code. EIC provided infusion therapy services to patients. On information and belief, at all times relevant to this Counterclaim, Rutherford and his daughter Lindsey were the sole members of EIC.

8.      I-45 was formerly an infusion therapy provider that provided various infusion drug therapies to patients in the Houston area. I-45 was formerly a Texas limited liability company with its principal place of business at 6300 Richmond Avenue, Houston, Texas 77057. The Texas Secretary of State forfeited I-45's certificate of formation as of August 5, 2016, pursuant to Section 171.309 of the Texas Tax Code. Egbuchunam was I-45's manager from its formation until 2014, and Rutherford served as its manager from 2014 to its forfeiture. I-45 provided infusion therapy services to patients. On information and belief, at all times relevant to this Counterclaim, Lindsey Rutherford was the sole member of I-45.

9.      Cego is Texas-licensed pharmacy that provides infusion therapy drugs to patients in the Houston area. Cego is a Texas limited liability company with its principal place of

business at 6300 Richmond Avenue, Houston, Texas 77057. On information and belief, at all times relevant to this Counterclaim, Egbuchunam and Dr. Uchenna Egbuchunam were the sole members and managing members of Cego.

10.     Rutherford, on information and belief, is a citizen of the State of Texas.

11.     Egbuchunam, on information and belief, is a citizen of the State of Texas.

## FACTUAL BACKGROUND

**BCBSTX's Business**

12.     BCBSTX administers health benefit plans for members of employer groups and individuals (collectively, its "members").

13.     While BCBSTX maintains networks of medical providers with whom it contracts to provide services to Blue Cross and Blue Shield members, members sometimes seek services from medical providers who are not in BCBSTX's networks ("out-of-network providers"). When a member seeks medical services from an out-of-network provider, the provider typically submits a claim to BCBSTX seeking reimbursement pursuant to the member's health benefit plan.

14.     The provider may submit the claim electronically or by mail. If by mail, the claim is submitted on a CMS-1500 form.

15.     BCBSTX processes claims submitted by out-of-network providers and, if it determines the claim is payable, pays the amount allowed for the services under the member's health benefit plan, less any patient share (such as coinsurance or deductible).

**The Provider Counterdefendants**

16.     The Provider Counterdefendants shared office space and employees in such a way that the lines between their businesses were blurred.

17.     For instance, all three were located at 6300 Richmond Avenue, Houston, Texas, and the business offices for the three businesses occupied the same space at that address.

18.     EIC and I-45 maintained a common website at www.experienceinfusioncenters.com, which provided a single address (6300 Richmond Avenue, Suite 333, Houston, Texas 77057) as the principal address of EIC and I-45. The website listed six "IV Suites," including one located on Interstate 45 in Spring, Texas, as belonging to EIC. The website, as well as EIC and I-45's public filings, provided a common telephone number ((713) 364-1111) for both entities.

19.     EIC and I-45 used the same referral and admission forms, including, but not limited to, forms for insurance verification, assignment of benefits and designation of authorized representative, HIPAA privacy notices, patient registration, antibiotic orders and nursing assessments.

20.     EIC and I-45 also shared nurses, physicians, and other employees. For example, nurses Giovanni Silva, Rachel O'Brian and Ami Martinez, among others, simultaneously provided medical services for BCBSTX's members for both EIC and I-45. As another example, Tina Bass, among others, simultaneously verified patients' insurance coverage and benefits for BCBSTX's members for both EIC and I-45. As another example, Cheryl Major simultaneously worked in the billing and collections department for both EIC and I-45 as a claims auditor, and in that capacity sent correspondence and made telephone calls to BCBSTX regarding healthcare benefits claims submitted by EIC and I-45 to BCBSTX.

21.     On information and belief, EIC and I-45 used the same systems and personnel for maintaining patient accounts and for billing and collections, such that both submitted healthcare benefits claims to BCBSTX from the same address at 6300 Richmond Avenue, Houston, Texas

77057.

22.     On information and belief, the three businesses shared receptionists, such that an employee of Cego would often answer a telephone call directed to EIC's telephone number, and vice versa.

23.     Though Rutherford has no apparent ownership interest in Cego and, on information and belief, was not a supervisor or employee of Cego, he directed the manner in which Cego's employees submitted healthcare benefits claims to BCBSTX.

24.     Egbuchunam solicited and relied upon Rutherford's advice regarding Cego's billing and collections procedures, and borrowed billing and collections employees from EIC and I-45 to advise on billing and collections procedures.

**Claims Submitted on the CMS-1500 Form**

25.      The CMS-1500 form is a standard claim form designed by the National Uniform Claim Committee ("NUCC") and the National Uniform Billing Committee, in conjunction with the Centers for Medicare and Medicaid Services ("CMS") and the American Medical Association ("AMA"), and provides the uniform national standard for healthcare benefits claims submitted on paper.

26.     Providers in Texas are required to use the CMS-1500 form (version 08/05) for paper claims. Tex. Ins. Code § 1204.102; 28 Tex. Admin. Code § 21.2803(b)(1).

27.     Box 24(G) of the CMS-1500 form is labeled "Days or Units." According to the NUCC Instruction Manual for the CMS-1500:

> 'Days or Units' is the number of days corresponding to the dates entered in 24A
> or units as defined in CPT or HCPCS coding manual(s).

NUCC, 1500 Health Insurance Claim Form Reference Instruction Manual for Form Version 02/12, v. 1.1 (June 2013), at p. 41.

28.     The AMA's HCPCS coding manual specifies the quantities of drugs that constitute a single unit. For instance, for the antibiotic ceftriaxone sodium (CPT J0696 – Injection, ceftriaxone sodium, per 250 mg, brand name "Rocephin"), a single unit of the drug is 250 milligrams. Similarly, for the antibiotic cilastatin sodium (CPT J0743 – Injection, cilastatin sodium; imipenem, per 250 mg, brand name "Primaxin"), a single unit of the drug is 250 milligrams.

**Electronically Submitted Claims**

29.     Providers may also submit healthcare benefits claims electronically. Providers who submit health benefits claims electronically are required to do so in a format prescribed by federal and state regulations. *See* 45 C.F.R. §§ 162.920(a)(2), (11); 45 C.F.R. § 162.1102(b)(2)(iii), (c); 28 Tex. Admin. Code § 21.2803(e).

30.     The federal and state regulations require providers such as the Provider Counterdefendants to comply with "implementation guides" that are incorporated into the federal regulations.

31.     The implementation guides require providers to include a code in electronically submitted healthcare benefits claims that indicates the "Unit or Basis for Measurement."

32.     The implementation guides require providers to use different codes for milligrams (ME) and units (UN).

**Counterdefendants' Fraudulent Scheme**

33.     The Provider Counterdefendants are non-institutional providers which, during all times relevant to this counterclaim, did not participate in BCBSTX's provider networks.

34.     From 2011 to 2014, Counterdefendants engaged in a fraudulent scheme whereby the Provider Counterdefendants intentionally inflated the units of drugs they reported in the

claims they submitted to BCBSTX in order to obtain reimbursements that were hundreds of times higher than what they would have received had they accurately reported the number of units.

35. From 2011 to 2014, the Provider Counterdefendants submitted thousands of healthcare benefits claims to BCBSTX, in both paper and electronic formats.

36. In their healthcare benefits claims they submitted to BCBSTX, it was the standard practice of the Provider Counterdefendants to falsely report the number of units of Rocephin, Primaxin and other drugs that they administered to BCBSTX's members, in order to obtain higher reimbursements from BCBSTX.

37. For instance, the Provider Counterdefendants routinely submitted paper healthcare benefits claims seeking reimbursement for Rocephin and Primaxin, but recorded the number of milligrams in Box 24(G) of the CMS-1500 form instead of the number of units. The Provider Counterdefendants routinely billed 2,000 milligrams of Rocephin or Primaxin as 2,000 units, for example. Two thousand milligrams of Rocephin or Primaxin equals 8 units; thus, the Provider Counterdefendants inflated the number of units by a multiple of 250.

38. Similarly, the Provider Counterdefendants routinely submitted electronic healthcare benefits claims seeking reimbursement for Rocephin, Primaxin and other drugs, but recorded the number of milligrams along with the code "UN" to falsely inflate the number of units. For example, the Provider Counterdefendants routinely billed 2,000 as the quantity for Rocephin or Primaxin, along with the code "UN," representing that they had administered 2,000 units, when they had actually administered 2,000 milligrams. Again, 2,000 milligrams of Rocephin or Primaxin equals 8 units, so the Provider Counterdefendants routinely inflated the number of units for those drugs by a multiple of 250.

39.    The Provider Counterdefendants did not administer the quantities of drugs that they represented on at least 3,600 healthcare benefits claims that they submitted to BCBSTX.

40.    On information and belief, the Provider Counterdefendants did not even possess the quantities of drugs that they represented on the healthcare benefits claims that they submitted to BCBSTX.

41.    Instead, Rutherford, with Egbuchunam's knowledge, participation, and approval, instructed employees of the Provider Counterdefendants to falsely bill for the number of milligrams administered instead of the number of units on healthcare benefits claims.

42.    EIC began submitting healthcare benefits claims to BCBSTX that contained inflated units, mainly for Rocephin, in 2011.

43.    Upon information and belief, at a meeting in 2012 attended by Rutherford, Egbuchunam, Cheryl Major, and other billing and collections employees of EIC, I-45 and Cego, the Provider Counterdefendants and Individual Counterdefendants agreed to engage in a systematic practice of billing the number of milligrams administered instead of the number of units on healthcare benefits claims that EIC, I-45 and Cego submitted to BCBSTX and other payers, for the purpose of obtaining higher reimbursements from BCBSTX.

44.    Rutherford and Egbuchunam intended that the inflation of units on healthcare benefits claims submitted to BCBSTX would result in BCBSTX paying higher reimbursements to the Provider Counterdefendants, and they knowingly and intentionally instructed their employees to engage in inflation with the aim of defrauding BCBSTX.

45.    Even when the Provider Counterdefendants submitted healthcare benefits claims to BCBSTX that accurately reflected the numbers of units actually administered to patients, they often called BCBSTX after submitting the claims to "correct" the quantity of units on the claim

forms, thereby fraudulently inflating the units and obtaining higher reimbursements from BCBSTX.

46.     The Counterdefendants' inclusion of false and overstated quantities of drugs on the healthcare benefit claims they submitted to BCBSTX was intentional and done for the purpose of obtaining higher reimbursements from BCBSTX.

47.     Counterdefendants did not undertake the above activities and practices in isolation, but instead entered into a common scheme and conspiracy in 2012 or earlier, when they agreed to fraudulently inflate the number of units of infusion drugs represented on healthcare benefits claims that the Provider Counterdefendants submitted to BCBSTX.

48.     Each of the Counterdefendants, with knowledge and intent, agreed to the object of the conspiracy, which was to obtain higher reimbursements of their healthcare benefits claims by fraudulently billing BCBSTX for drugs that Counterdefendants never provided to BCBSTX's members. Each Counterdefendant embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals.

## RICO ALLEGATIONS

### The Counterdefendants' Enterprise

49.     Counterdefendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who participated in the operation, management and control of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

50.     The enterprise is an "association-in-fact" within the meaning of 18 U.S.C. § 1961(4), consisting of Counterdefendants, as well as their employees and agents. The enterprise was created and used as a tool to effectuate Counterdefendants' pattern of racketeering activity.

51.     The enterprise was an organization that engaged in, and those activities affected,

interstate commerce.

52.    The Counterdefendants are distinct from the association-in-fact enterprise, which is an concerted effort by all of the Counterdefendants to defraud BCBSTX by combining and sharing the resources of the Provider Counterdefendants (including, but not limited to, their billing and collections systems and staff) to submit fraudulent healthcare benefits claims in order to obtain higher reimbursements from BCBSTX.

53.    The association-in-fact enterprise is also distinct from the pattern of racketeering activity in which the Counterdefendants engaged.

54.    To obtain inflated reimbursements in the manner set forth above, Counterdefendants needed a system that allowed them to manipulate and control their billing practices and conceal the fraud. The enterprise provided Counterdefendants with that system, and their control of it and participation in it was necessary for the successful operation of the scheme. Counterdefendants controlled and operated the enterprise as follows:

a.    The Individual Counterdefendants instructed the Provider Counterdefendants' employees to submit bills that include the number of milligrams of infusion drugs administered instead of the number of units;

b.    The Provider Counterdefendants shared the same managers and managing members, including the Individual Counterdefendants;

c.    Rutherford, who was the managing member of EIC, instructed the employees of the three Provider Counterdefendants to collectively engage in the fraudulent billing practices outlined above;

d.    Egbuchunam, who was the managing member of Cego and manager of I-45, approved Rutherford's instructions and aided in their implementation

with the employees of the three Provider Counterdefendants;

e.    The Provider Counterdefendants shared office space at 6300 Richmond Avenue, Houston, Texas, and, on information and belief, also shared telephone lines, allowing for coordination and control of the enterprise.

55.    Each of the Counterdefendants played a distinct role in the operation, management and control of the enterprise, which had an ascertainable structure. The Provider Counterdefendants submitted fraudulent healthcare benefits claims to BCBSTX, while the Individual Counterdefendants initiated the fraudulent scheme and controlled, directed, and coordinated the Provider Counterdefendants' activities.

## Predicate Acts

56.    Counterdefendants caused hundreds of healthcare benefits claims on CMS-1500 forms to be placed with the U.S. Postal Service or a private or commercial interstate carrier, for delivery to BCBSTX at its U.S. Postal Service post office box designated for submission of CMS-1500 claim forms.

57.    Counterdefendants mailed the CMS-1500 forms to BCBSTX for the purpose of facilitating their fraudulent scheme.

58.    Each of the hundreds of fraudulent CMS-1500 forms mailed by Counterdefendants was an act of mail fraud in violation of 18 U.S.C. § 1341 and each is a separate predicate offense for purposes of 18 U.S.C. § 1962(c).

59.    Counterdefendants likewise caused thousands of electronic healthcare benefits claims to be sent via the Internet to BCBSTX.

60.    Counterdefendants sent the electronic healthcare benefits claims to BCBSTX for the purpose of facilitating their fraudulent scheme, and transmission of information via the

Internet constitutes transmission of writings, signs or signals in interstate commerce.

61.     Each of the thousands of electronic healthcare benefits claims sent via the Internet to BCBSTX was an act of wire fraud in violation of 18 U.S.C. § 1343, and each is a separate predicate offense for purposes of 18 U.S.C. § 1962(c).

62.     For example, on May 23, 2012, EIC mailed a CMS-1500 form to BCBSTX, seeking reimbursement for 2,000 units of Rocephin that it claimed to have administered to one of BCBSTX's members. BCBSTX allowed $3,200 under the member's benefits in reliance on EIC's false representation that it administered 2,000 units of Rocephin, of which BCBSTX paid $1,053.77 and the remainder was the member's responsibility. However, EIC actually administered 2,000 milligrams, or 8 units, of Rocephin to the member. Accordingly, EIC fraudulently inflated the number of units it administered by a multiple of 250, causing BCBSTX to pay it amounts to which it was not entitled.

63.     As another example, on or about November 15, 2013, I-45 submitted an electronic healthcare benefits claim to BCBSTX, seeking reimbursement for 4,000 units of Rocephin that it claimed to have administered to one of BCBSTX's members. BCBSTX allowed and paid $2,420.11 to I-45 under the member's benefits in reliance on I-45's false representation that it administered 4,000 units of Rocephin. However, I-45 actually administered 4,000 milligrams, or 16 units, or Rocephin to the member. Accordingly, I-45 fraudulently inflated the number of units it administered by a multiple of 250, causing BCBSTX to pay it amounts to which it was not entitled.

64.     As another example, on or about January 12, 2014, Cego mailed a CMS-1500 form to BCBSTX, seeking reimbursement for 4,000 units of Primaxin that it claimed to have administered to one of BCBSTX's members. BCBSTX allowed and paid $5,880.00 to Cego

under the member's benefits in reliance on Cego's false representation that it administered 4,000 units of Primaxin. However, Cego actually administered 4,000 milligrams, or 16 units, of Primaxin to the member. Accordingly, Cego fraudulently inflated the number of units it administered by a multiple of 250, causing BCBSTX to pay it amounts to which it was not entitled.

65.     These examples describe only three of the more than 3,600 fraudulent healthcare benefits claims submitted by the Provider Counterdefendants. Attached as Exhibit A is a spreadsheet (redacted to omit protected health information) identifying the fraudulent healthcare benefits claims. BCBSTX will provide an unredacted copy of the spreadsheet to Counterdefendants pursuant to the protective order entered in this case.

66.     The attached Exhibit A does not contain any healthcare benefits claims submitted by the Provider Counterdefendants for patients who were covered by a health benefit plan through the Federal Employee Program.

67.     As alleged above, the Individual Counterdefendants directed and approved the fraudulent scheme by, among other things, directing the billing department employees of the Provider Counterdefendants to submit healthcare benefit claims to BCBSTX that reflected that patients were provided more units of infusion drugs than Provider Counterdefendants actually provided.

68.     On information and belief, the Provider Counterdefendants attempted to avoid detection of their scheme by adopting a policy—approved and implemented by the Individual Counterdefendants—of waiving any balance owed by BCBSTX's members after payment of their healthcare benefits claims by BCBSTX. This policy had the effect of allowing the Provider Counterdefendants to inflate the healthcare benefits claims they submitted to BCBSTX without

risk that individual members would complain to BCBSTX or state regulators about inflated bills.

69.     In 2013, BCBSTX's Special Investigations Department ("SID") opened an investigation of the Provider Counterdefendants' billing practices. After interviewing EIC and I-45's legal counsel and obtaining medical records from EIC, SID determined that the Provider Counterdefendants had engaged in improper billing practices that resulted in their receiving millions of dollars in overpayments.

70.     In May 2014, SID notified the Provider Counterdefendants that, as of May 21, 2014, healthcare benefits claims with certain CPT codes would need to be submitted with medical records documenting the specific services provided to the members.

71.     On information and belief, Rutherford instructed the Provider Counterdefendants in July 2014 to cease inflating the billed units of infusion drugs on their healthcare benefits claims submitted to BCBSTX and to instead bill the units actually administered to BCBSTX's members. The Provider Counterdefendants' overbilling promptly ceased thereafter.

72.     Other matter and things sent through or received from the U.S. Postal Service, commercial carrier or interstate wire transmission by Counterdefendants included information or communications in furtherance of or necessary to effectuate the scheme.

73.     Counterdefendants thus committed thousands of predicate acts of criminal racketeering that were related to each other and in furtherance of their scheme to defraud BCBSTX.

74.     In addition, in order to make their scheme effective, each of the Counterdefendants sought to and did aid and abet the others in violating the above statutes, within the meaning of 18 U.S.C. § 2. Accordingly, their conduct is criminal and indictable under 18 U.S.C. §§ 1341 and 1343 on this additional basis.

## Pattern of Racketeering Activity

75.     Counterdefendants engaged in a pattern of racketeering activity, as defined by 18 U.S.C. § 1961(5), by committing and aiding and abetting in the commission of at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. §§ 1341 and 1343, as described above, within the last ten years.

76.     In fact, each Counterdefendant has committed or aided and abetted in the commission of thousands of acts of racketeering activity.

77.     Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including BCBSTX.

78.     Counterdefendants' criminal acts amount to a pervasive and continuous pattern of racketeering activity over a significant period of time, given that they took place repeatedly over a period of several years.

## CONTINUING TORT DOCTRINE

79.     Counterdefendants' fraudulent conduct was repeated thousands of times over the period from 2011 through 2014, as the Provider Counterdefendants repeatedly, knowingly, and continuously submitted fraudulent healthcare benefits claims to BCBSTX.

80.     Pursuant to the continuing tort doctrine, the statute of limitations for the causes of action alleged in this Counterclaim accrued when Counterdefendants' tortious conduct ceased in 2014.

## TOLLING AGREEMENT

81.     EIC, I-45 and Rutherford agreed in writing to toll the running of any statute of limitations, statute of repose, laches or other similar time-related equitable, contractual or

statutory period relating to BCBSTX's claims from December 7, 2016, through the date of the filing of this Counterclaim.

## JOINT AND SEVERAL LIABILITY

82.      The Counterdefendants are jointly and severally liable for any and all damages resulting from the conduct alleged in this Counterclaim.

### COUNT ONE
### Federal Civil RICO, 18 U.S.C. § 1962(c)
### (All Counterdefendants)

83.      BCBSTX repeats and realleges the allegations in Paragraphs 1 through 82 as if fully set forth herein.

84.      This claim for relief arises under 18 U.S.C. § 1964(c).

85.      As set forth in detail above, Counterdefendants have violated 18 U.S.C. 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the enterprise through a pattern of racketeering.

86.      As a direct and proximate result, BCBSTX has been injured in its business and property by the predicate acts that make up Counterdefendants' pattern of racketeering, including but not limited to the at least 9.4 million in payments it made to Counterdefendants due to Counterdefendants' fraud. BCBSTX's injuries were a reasonably foreseeable consequence of Counterdefendants' conduct.

WHEREFORE, BCBSTX requests that the Court enter judgment in its favor and against Counterdefendants as follows:

(a)      actual damages in an amount to be proven at trial, but in any event no less than $9.4 million;

(b)      treble damages pursuant to 18 U.S.C. § 1964 in an amount to be proven at trial, but in any event no less than $28.2 million;

(c)     reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c); and

(d)     such other relief as the Court deems appropriate.

## COUNT TWO
### Conspiracy to Violate Federal Civil RICO, 18 U.S.C. § 1962(d)
### (All Counterdefendants)

87.     BCBSTX repeats and realleges the allegations in Paragraphs 1 through 86 as if fully set forth herein.

88.     This claim arises under 18 U.S.C. § 1964(c).

89.     As set forth above, in violation of 18 U.S.C. § 1962(d), Counterdefendants have knowingly and willfully combined, conspired, and agreed to violate 18 U.S.C. § 1962(c), and to conduct and participate in, directly or indirectly, the operation, management and control of the enterprise's affairs through a pattern of racketeering activity consisting in part of thousands of individual predicate acts of mail and wire fraud.

90.     As a direct and proximate result, BCBSTX has been injured in its business and property, including but not limited to the at least $9.4 million in payments it made to Counterdefendants due to Counterdefendants' fraud. BCBSTX's injuries were a reasonably foreseeable consequence of Counterdefendants' conduct.

WHEREFORE, BCBSTX requests that the Court enter judgment in its favor and against Counterdefendants as follows:

(a)     actual damages in an amount to be proven at trial, but in any event no less than $9.4 million;

(b)     treble damages pursuant to 18 U.S.C. § 1964 in an amount to be proven at trial, but in any event no less than $28.2 million;

(c)     reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c); and

(d)     such other relief as the Court deems appropriate.

### COUNT THREE
**Violation of 18 U.S.C. § 2, Aiding and Abetting Violation of 18 U.S.C. § 1962(c)
(All Counterdefendants)**

91.     BCBSTX repeats and realleges the allegations in Paragraphs 1 through 90 as if fully set forth herein.

92.     This claim arises under 18 U.S.C. § 1964(c).

93.     As set forth above, Counterdefendants knowingly, and with shared intent, sought to aid and abet, and did aid and abet each of the other Counterdefendants in the commission of predicate acts, in engaging in a pattern of racketeering activity, and in violating 18 U.S.C. § 1962(c).

94.     As a result, under 18 U.S.C. § 2, the RICO violations of each Counterdefendant are those of the others as if they had been committed directly by them.

95.     As a direct and proximate result of each Counterdefendant's aiding and abetting of the others in violating 18 U.S.C. § 1962(c), BCBSTX has been injured in its business and property, including but not limited to the at least $9.4 million in payments it made to Counterdefendants due to Counterdefendants' fraud. BCBSTX's injuries were a reasonably foreseeable consequence of Counterdefendants' conduct.

WHEREFORE, BCBSTX requests that the Court enter judgment in its favor and against Counterdefendants as follows:

(a)     actual damages in an amount to be proven at trial, but in any event no less than $9.4 million;

(b)     treble damages pursuant to 18 U.S.C. § 1964 in an amount to be proven at trial, but in any event no less than $28.2 million;

(c)     reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c); and

(d)     such other relief as the Court deems appropriate.

## COUNT FOUR
### Common Law Fraud
### (Provider Counterdefendants)

96.     BCBSTX repeats and realleges the allegations in Paragraphs 1 through 95 as if fully set forth herein.

97.     From 2011 through 2014, the Provider Counterdefendants sent over 3,600 healthcare benefits claims to BCBSTX that, as set out above, purposely inflated the number of units of drugs for which the Provider Counterdefendants sought reimbursement.

98.     The numbers of units entered on the CMS-1500 forms and electronic healthcare benefits claims that the Provider Counterdefendants submitted to BCBSTX were material, because BCBSTX based its reimbursements to the Provider Counterdefendants on the number of units indicated by the Provider Counterdefendants.

99.     The Provider Counterdefendants knew that the numbers of units on the CMS-1500 forms and electronically submitted claims were inflated, because they were aware that recording the number of milligrams administered as units was contrary to the requirements of federal and state statutes and regulations, industry norms, and BCBSTX's procedures for completion of an accurate CMS-1500 claim form or electronic healthcare benefits claim.

100.    The Provider Counterdefendants nevertheless submitted CMS-1500 forms and electronic healthcare benefits claims with inflated numbers of units with the intention that BCBSTX would provide them with higher reimbursements than they would have received had they accurately recorded the number of units of drugs administered to BCBSTX's members.

101.    BCBSTX reasonably relied upon the Provider Counterdefendants'

misrepresentations regarding the units administered to its members and overpaid the Provider Counterdefendants at least $9.4 million from 2011 through 2014 as a direct and proximate result of the Provider Counterdefendants' misrepresentations.

102.    The Provider Counterdefendants committed fraud with the intent to cause substantial injury or harm to BCBSTX.

## **JURY DEMAND**

103.    BCBSTX demands a jury trial on all issues triable to a jury.

WHEREFORE, BCBSTX requests that the Court enter judgment in its favor and against the Provider Counterdefendants as follows:

(a)     actual damages in an amount to be proven at trial, but in any event no less than $9.4 million;

(b)     exemplary and punitive damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003, in an amount to be proven at trial; and

(c)     such other relief as the Court deems appropriate.

Dated: July 28, 2017                                    Respectfully submitted,


By: /s/ Martin J. Bishop
    Martin J. Bishop (Tex. Bar No. 24086915)
    Email:    mbishop@reedsmith.com
    Rebecca R. Hanson (admitted *pro hac vice*)
    Email:    rhanson@reedsmith.com
    Thomas C. Hardy (admitted *pro hac vice*)
    Email:    thardy@reedsmith.com
    Meredith A. Shippee (admitted *pro hac vice*)
    Email:    mshippee@reedsmith.com
    REED SMITH LLP
    811 Main Street, 17th Floor
    Houston, Texas 77002
    Telephone: +1 713 469 3800
    Facsimile: +1 713 469 3899

    *Counsel for Health Care Service Corporation,*
    *a Mutual Legal Reserve Company*

## CERTIFICATE OF SERVICE

I, Martin J. Bishop, an attorney, certify that the foregoing document was served via this Court's ECF filing and service system upon all parties through their counsel appearing of record in this action.

/s/ Martin J. Bishop